UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN SUZUKI, | Case No. CV 09-6317 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred in determining her residual functional capacity and identifying her past relevant work. (Joint Stip. at 3-7, 10-13.) For the reasons explained below, the Court concludes that the ALJ did err and remands the case to the Agency for further proceedings.

## II. BACKGROUND

Plaintiff applied for DIB and SSI on June 26, 2007, alleging that she had been unable to work since June 1, 2005, due to back problems, high blood pressure, and complications from car accidents. (Administrative Record ("AR") 144-48, 167.)  The Agency denied the applications initially and on reconsideration.  (AR 96-107.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ").  (AR 108-10.)  On November 5, 2008, Plaintiff appeared with counsel at the hearing and testified.  (AR 18-83.)  On December 15, 2008, the ALJ issued a decision denying benefits.  (AR 86-95.)  After the Appeals Council denied Plaintiff's request for review, she commenced this action.  (AR 1-7.)

## III. ANALYSIS

A.   <u>The ALJ's Residual Functional Capacity Determination</u>

In her first claim of error, Plaintiff contends that the ALJ erred in determining that she was capable of performing light work. (Joint Stip. at 3-7.)  For the following reasons, the Court concludes that the ALJ erred but that the error was harmless.

Examining orthopedist Dr. Thomas Dorsey opined that Plaintiff was capable of performing work involving a full day of standing and a half day of walking.[1]  (AR 265.)  This equates to light work.  *See* 28 C.F.R. § 416.967(b) ("Light work . . . requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.")

---

[1] Dr. Dorsey also made other findings, for example, he determined that Plaintiff could lift 10 pounds frequently and up to 25 pounds occasionally (AR 265), but those other limitations are not at the heart of this dispute.

1    Consulting doctor Samuel Landau testified at the hearing that
2 Plaintiff could not stand or walk for more than two hours in an eight-
3 hour workday.² (AR 27.)  These limitations equate to sedentary work.
4 *See* 28 C.F.R. § 416.967(b); and Social Security Ruling 83-10 ("[T]he
5 full range of light work requires standing or walking, off and on, for
6 a total of approximately 6 hours of an 8-hour workday.").
7    The ALJ determined that Plaintiff was capable of light work.  (AR
8 92.)  However, he never explained why he was rejecting Dr. Landau's
9 opinion that Plaintiff was limited to sedentary work.  Plaintiff
10 contends this was error.  (Joint Stip. at 5-6.)  The Agency seems, at
11 least on the surface, to agree.  It writes, "As Plaintiff indicates,
12 the [residual functional capacity] was mistranscribed, and failed to
13 list Plaintiff's standing, walking, and sitting restrictions (AR 92)."
14 (Joint Stip. at 8.)  The Agency goes on to argue, however, that, in
15 fact, the ALJ actually adopted Dr. Landau's residual functional
16 capacity finding and, therefore, any error was harmless.  (Joint Stip.
17 at 8-9.)
18    The ALJ clearly erred when he wrote at page four of his decision
19 that Plaintiff could perform light work.  (AR 92.)  On the next page
20 of his decision, however, he corrected that error by noting that
21 Plaintiff could only stand and/or walk for two hours in an eight-hour
22 workday.  (AR 93.)  This was consistent with the residual functional
23 capacity he described for the vocational expert and on which the
24 vocational expert based his opinion.  (AR 62 (instructing vocational
25 expert to assume Plaintiff had the same physical restrictions as

---

² Dr. Landau offered limitations for other functions, too, but
28 they are not in question here.

described by Dr. Landau).)  The vocational expert testified that Plaintiff, or someone like her, could not perform Plaintiff's previous work as it was actually performed, but could perform the work as it is generally performed, i.e., at a sedentary level.[3]  (AR 63-64.) Adopting this testimony, the ALJ concluded that Plaintiff's functional limitations would not prevent her from performing her past relevant work as a "credit clerk/charge account clerk."  (AR 95.)  Because the ALJ clearly based his conclusions at step four on the exertional limitations opined by Dr. Landau, it is apparent that he did not actually reject that doctor's opinion.  Thus, any error in stating that Plaintiff could do light-level work was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding error that is inconsequential to the ultimate nondisability determination is harmless).  For these reasons, this claim does not require remand or reversal.

B.   <u>Plaintiff's Past Relevant Work</u>

In her second claim of error, Plaintiff contends that the ALJ erred at step four in determining that she could perform her past relevant work as it is generally performed in the economy.  (Joint Stip. at 10-13.)  For the following reasons, the Court agrees.

Prior to the administrative hearing, the vocational expert submitted a "work summary" report in which he identified Plaintiff's prior job as a "credit clerk" and described it as sedentary work.  (AR 241.)  This position is found in the Dictionary of Occupational Titles

---

[3] As discussed below, however, the vocational expert's testimony was problematic in other ways.

("DOT") at section 205.367-022, where the duties are described as follows:

> Processes applications of individuals applying for loans and credit: Interviews applicant to obtain personal and financial data and fills out application.  Calls or writes to credit bureaus, employers, and personal references to check credit and personal references.  Establishes credit limit, considering such factors as applicant's assets, credit experience, and personal references, based on predetermined standards.  Notifies customer by mail, telephone, or in person of acceptance or rejection of application.  May keep record or file of credit transactions, deposits, and payments, and sends letters or confers with customers having delinquent accounts to make payment [COLLECTION CLERK (clerical) 241.357-010].  May send form letters and brochures to solicit business from prospective customers.  May adjust incorrect credit charges and grant extensions of credit on overdue accounts.  May accept payment on accounts.  May keep record of applications for loans and credit, using computer.  May compute interest and payments, using calculator.  May provide customer credit information or rating on request to retail stores, credit agencies, or banks.  May check value of customer's collateral, such as securities, held as security for loan. May advise customer by phone or in writing about loan or credit information.  May assist customer in filling out loan or credit application.

(DOT No. 205.367-022.)

1    Plaintiff testified at the hearing that her job involved
2 "promoting . . . credit cards to people in different stores" such as
3 Target or Wal-Mart.  (AR 55.)  She explained that she would approach
4 customers as they entered the store and entice them to sign up for
5 credit cards by, for example, offering them gifts.  (AR 55.)
6 Thereafter, she would take the credit card applications to the store's
7 customer service department, where employees there would verify the
8 applicant's credit and, if warranted, approve the line of credit.  (AR
9 55-56.)  Plaintiff testified that she was required to stand "all day"
10 to perform this job.  (AR 55.)
11    Hearing this, the vocational expert determined that Plaintiff had
12 performed this job as light work and described the position as "a
13 composite job, promoter sales clerk," but with the same DOT
14 classification (No. 205.367-022) he had identified in his work summary
15 report.  (AR 61, 241.)  The vocational expert testified that a
16 hypothetical person with Plaintiff's restrictions--i.e., limited to no
17 more than two hours of walking and standing--could not perform the
18 work of a credit clerk as Plaintiff actually performed the job because
19 it required too much standing.  (AR 62-64.)  The vocational expert
20 explained that that there was "no specific DOT code for the job that
21 [Plaintiff] performed," and the one that was close, "promoter," did
22 not capture what Plaintiff actually did.  (AR 63.)  Even so, the
23 vocational expert testified that a hypothetical person with
24 Plaintiff's limitations could do the job "as it's customarily
25 performed, but no[t] as actually performed," adding that, "because the
26 DOT is rather outdated[,] a specific job title for her, what she
27 performed, does not exist in the DOT."  (AR 64, 65.)
28

6

1        Thereafter, Plaintiff testified that her work did not require her
2   to check the credit rating of applicants, but simply to verify that
3   the applicant had filled out the application form and that someone
4   else did the credit check.  (AR 65-66.)  The vocational expert changed
5   his description of Plaintiff's past work, again, this time identifying
6   it as "charge account clerk" or "credit card interviewer," under DOT
7   No. 205.367-014, work which is generally performed at a sedentary,
8   unskilled level, but which was actually performed at a light level by
9   Plaintiff.  (AR 65-66, 73-75.)  The vocational expert testified that a
10  hypothetical person with Plaintiff's limitations could perform this
11  job as generally performed in the economy.  (AR 75.)
12       Plaintiff then testified that her job did not involve talking to
13  customers about the different credit plans offered, reviewing
14  applications received by mail, or filing credit applications after the
15  credit department approved or disapproved credit, all duties performed
16  by a "charge-account clerk" under DOT No. 205.367-014.  (AR 76-77.)
17  In response, the vocational expert clarified that Plaintiff's job
18  could not be found in the DOT and that, although he was familiar with
19  people who performed the job, there was no typical manner in which it
20  was performed in the national economy.  (AR 79-80.)  The vocational
21  expert then testified, contrary to his previous testimony, that the
22  job as described by Plaintiff was "typically" performed standing up,
23  and that a person who was limited to standing or walking only two
24  hours a day could not perform it.  (AR 80-81.)
25       After the ALJ asked the vocational expert whether he was now
26  changing his previous testimony that Plaintiff could perform the job
27  as typically performed in the economy, the vocational expert
28  testified:

1           For clarity sake, this is the best that I could find in
2        terms of job title that comes close to what she actually
3        performed given her additional testimony provided.  I think
4        I began originally by saying that it was a composite job.
5        The promoting duties required the standing the greater part
6        of the day.  There's no specific DOT that matches what she
7        actually did.  So my testimony wouldn't change.  This job
8        would be the best -- the closest I could come to describing
9        what she actually did.  I offered responses to how I've
10       observed the job performed.
11 (AR 81.)
12      The vocational expert then reiterated that in his view Plaintiff
13 could perform the job as it is generally performed in the economy.
14 (AR 81.)  The ALJ did not permit further questioning on the issue.
15 (AR 82.)  Ultimately, he determined that Plaintiff could perform the
16 job of "charge-account clerk" as that job is generally performed in
17 the economy.
18      Plaintiff now argues that the ALJ failed to accurately identify
19 her past relevant work and that this error caused him to erroneously
20 conclude that she could perform the job of charge-account clerk as
21 generally performed in the economy.  For the following reasons, the
22 Court agrees.
23      The vocational expert offered several different job titles that
24 he believed approximated Plaintiff's job of promoting credit
25 applications before settling on "charge-account clerk."  (AR 74.)
26 After he arrived at this determination, Plaintiff testified, and the
27 vocational expert agreed, that she did not perform three of the four
28 duties that are described for that job in the DOT.  (AR 76-79.)

Because it is undisputed that Plaintiff's job duties were at odds with the DOT, the ALJ could not rely on the vocational expert's testimony unless the record contained "persuasive evidence" to support the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). The Court is not satisfied that the record contains such persuasive evidence.

The duties described in the DOT for "charge-account clerk" do not resemble the duties that Plaintiff performed in her job. The two jobs are altogether different. In fact, it seems that the vocational expert never resolved the issue that he himself identified, namely, that Plaintiff's work was a "composite" position, requiring both promotion and customer assistance, and that the position did not exist in the DOT. Nor was it reasonable for the ALJ to rely on the vocational expert's testimony regarding the "typical" requirements of a job that the vocational expert conceded was not performed in a typical fashion throughout the country. *See Valencia v. Heckler*, 751 F.2d 1082, 1086-87 (9th Cir. 1985) (rejecting administrative decision that claimant could perform past relevant work based on the exertional level of only one task that the work involved). Thus, the ALJ's reliance on the vocational expert's testimony to support his step-four conclusion that Plaintiff could perform her past relevant work as it is typically performed was erroneous.

Further, to the extent that the ALJ's decision can be read to imply that, even if one were to conclude that the charge-account clerk job was a different job but that Plaintiff could perform it because it would require "minimal on-the-job training or instruction," (AR 95), this was also error. The ALJ resolved this case at step four. Step four is limited to determining whether a claimant can perform her

prior work, not other work.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166-67 (9th Cir. 2008).  The ALJ was not at liberty at step four to determine that Plaintiff was not disabled because she had transferable skills that could be used in another job.  *Id.*  Any attempt to do so was error.

The ALJ also erred in relying on the vocational expert's testimony that Plaintiff could perform her past work because the expert did not appear to take into account her mental limitations.  In posing the hypothetical question, the ALJ instructed the vocational expert to consider Plaintiff's mental restrictions identified by the medical expert, Dr. David Glassmire.  (AR 62.)  Dr. Glassmire testified that Plaintiff was limited to moderate-level tasks, five or six-step instructions, and to no more than occasional, non-intense contact with co-workers, supervisors, and the public.  (AR 48.)  The vocational expert did not explain how he reconciled these findings with the demands of a charge-account clerk, which requires a "significant" level of work and constant contact with the public.  DOT No. 205.367-014.

On remand, the vocational expert should specifically identify Plaintiff's past relevant work and the applicable DOT job title or titles her work fits under, if practicable.  The vocational expert should then explain how Plaintiff can perform this job or these jobs despite her physical and mental limitations.

C.   Remand is Appropriate

Plaintiff requests that the Court order that the case be remanded for the payment of benefits.  The determination whether to remand for further proceedings or for payment of benefits lies within the discretion of the Court.  *McAllister v. Sullivan*, 888 F.2d 599, 603

(9th Cir. 1989). In most circumstances in Social Security disability cases, remand is the proper course. *See Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004). This is particularly true where, as here, remand may be productive in that additional testimony can resolve the issues raised by the Court. *See, e.g., Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003). It is not clear to the Court whether, once Plaintiff's past relevant work is properly classified, the vocational expert will determine that she is capable of performing it. Thus, the case will be remanded for further proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: November 3, 2010.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Suzuki\Memo_Opinion.wpd